### HINES, Agent, v. KEYSER.*

(Circuit Court of Appeals, Third Circuit. November 12, 1920.)

No. 2596.

1. **Master and servant ☞286(15)—Negligence in placing cars in switchyard question for jury.**

    Where plaintiff, an engineer, when moving his engine backward, pushing cars in a railroad yard, was injured by collision between his cab and a car standing on a switch track, whether the company was chargeable with negligence in leaving the car so close to the passing track that it could not be passed safely by any engine, unless it was moved slowly and with extreme care, nor at all by one with a cab slightly wider than usual, and where it could not be seen by plaintiff because of the cars ahead, *held* properly submitted to the jury.

2. **Commerce ☞27(5)—Employers' Liability Act applicable to employé engaged in interstate commerce though employé causing the injury was not so engaged.**

    Where an employé was injured while a carrier was engaged in interstate commerce, and while the employé was employed in such commerce, it is immaterial to his right of recovery under Employers' Liability Act April 22, 1908, § 1 (Comp. St. § 8657), whether or not another employé, when he committed the act of negligence which was the cause of the injury, was also employed in interstate commerce.

In Error to the District Court of the United States for the Eastern District of Pennsylvania; J. Whitaker Thompson, Judge.

Action at law by Harvey K. Keyser against Walker D. Hines, Agent. Judgment for plaintiff, and defendant brings error. Affirmed.

Wm. Clarke Mason, of Philadelphia, Pa., for plaintiff in error.

Frank F. Davis and John C. Oldmixon, both of New York City, for defendant in error.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

WOOLLEY, Circuit Judge. The judgment here under review was recovered in an action for personal injuries brought under the Federal Employers' Liability Act. Keyser, the plaintiff below, was a locomotive engineer engaged at the time of the accident in shifting cars in the South Bethlehem Yard of the Philadelphia & Reading Railway

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

*Certiorari denied 254 U. S. —, 41 Sup. Ct. 218, 65 L. Ed. —.

Company then in possession and operation of the Director General of Railroads. The movement was of a draft of six cars pushed from the rear by the engine in reverse. Because the engineer could not see the track from his position in the cab, this backward movement was controlled solely by signals made by a brakeman standing on the third car from the engine and received by the plaintiff sitting with his hand on the throttle at his usual place, but (because of the backward movement) with his body turned and his eyes toward the brakeman. As the draft moved along Track No. 2 the cab of the engine was struck by a car on a switch leading into Track No. 4, left in such position that one corner projected towards and by a glancing blow collided with the engine, crushing in the cab and inflicting the injury of which the plaintiff complains in this action. Upon the plaintiff's testimony alone the defendant moved for a directed verdict on the several grounds, which, because of the court's refusal, followed by verdict and judgment, are brought before us by this writ of error.

[1] The first of these concerns the question of proof of defendant's negligence and is raised on the defendant's contention that there was not sufficient evidence to warrant the finding by the jury that placing the car on the switch in such position that its corner projected and collided with the engine was a violation of any duty which the defendant owed the plaintiff.

The bases of this contention are that the normal clearance between the tracks, though so narrow as always to be fraught with great danger, did not involve negligence, Reese v. Philadelphia & Reading Railway Company, 239 U. S. 463, 36 Sup. Ct. 134, 60 L. Ed. 384; and that the clearance was ample if the passing engine had been carefully handled, as evidenced by the fact that another engine running slowly and without cars had on the same day approached the same projecting car and by slowing down had passed it with a clearance of one inch. That the plaintiff's engine did not pass it in safety, the defendant contends, was due to one of two things: Because the cab of his engine was slightly wider than the cab of the engine that had passed in safety, or because the plaintiff's engine, moving at a speed of from six to seven miles an hour acquired a sway which brought about the contact; contact being avoided by the first engine because of its lower speed. As there was no evidence that the speed at which the plaintiff was moving his engine was excessive, and as there was evidence that the plaintiff's view of the track ahead and its perils was obstructed by the draft he was moving, the defendant evidently owed the plaintiff the duty of supplying him with a smaller engine as a reasonably safe instrument with which to work on that track, or of assuring him a clear way as a reasonably safe place in which to follow his employment of shifting cars. As the defendant had placed a car on the siding in such position that the plaintiff could not pass it with the engine supplied him without collision, and as the defendant called upon the plaintiff to make a movement the danger of which was masked to him, even if it were obvious to others, it was a fair question for the jury whether the defendant had not thereby violated the duty which the law imposed upon him for the protection of his employé.

As a second ground for a directed verdict, the defendant insisted that the injury to the plaintiff arose out of a risk incident to his employment which he had assumed and for which therefore he cannot recover, relying upon repeated rulings of the Supreme Court that, except with reference to certain defenses expressly eliminated, assumption of risk under the Federal Employers' Liability Act has the same effect as a complete bar to an action as it had before the passage of the Act. This effect is elaborately considered and tersely stated by the Supreme Court in Seaboard Air Line v. Horton, 233 U. S. 492, 504, 34 Sup. Ct. 635, 640 (58 L. Ed. 1062, L. R. A. 1915C, 1, Ann. Cas. 1915B, 475). There it was said:

"On the other hand, the assumption of risk, even though the risk be obvious, may be free from any suggestion of fault or negligence on the part of the employé. The risks may be present, notwithstanding the exercise of all reasonable care on his part. Some employments are necessarily, fraught with danger to the workman—danger that must be and is confronted in the line of his duty. * * * But risks of another sort, not naturally incident to the occupation, may arise out of the failure of the employer to exercise due care with respect to providing a safe place of work and suitable and safe appliances for the work. These the employé is not treated as assuming until he becomes aware of the defect or disrepair and of the risk arising from it, unless defect and risk alike are so obvious that an ordinarily prudent person under the circumstances would have observed and appreciated them."

See also Boldt v. Pennsylvania R. R. Co., 245 U. S. 441, 38 Sup. Ct. 139, 62 L. Ed. 385; Reed v. Director General, 267 Pa. 86, 110 Atl. 254.

We find nothing in the court's charge inconsistent with this rule of assumption of risk. The jury by its verdict has found negligence on the part of the defendant in leaving the car on a switch in a position whereby its corner projected and came into collision with an engine on another track, and that the risk of this negligence was not one ordinarily incident to the plaintiff's employment. It has also found that the risk of this negligence was not so open and obvious that the plaintiff employé should have seen it and appreciated it. Therefore, in these findings of the jury under the court's submission, we cannot say as a matter of law there was error.

[2] The remaining ground urged by the defendant for a directed verdict was the failure of the plaintiff's evidence to show that the defendant, the Director General of Railroads, "was engaged in interstate commerce at the time of the accident because there is no. proof that the car with which the engine collided was so employed." Stated differently, the defendant maintains that in order for the plaintiff to sustain the verdict under the Federal Employers' Liability Act, he must have proved that the defendant was engaged in interstate commerce at the time he, or some one of his servants, placed the car upon the siding in the negligent manner which later brought about the accident. This is a novel proposition. The defendant finds support for it in Mayers v. Union Railroad Co., 256 Pa. 474, 100 Atl. 967; Id., 243 U. S. 656, 37 Sup. Ct. 482, 61 L. Ed. 949. From a careful reading of this case and of the Federal authority on which it was expressly rested (Minneapolis & St. Louis R. R. Co. v. Winters, 242 U. S. 353, 37 Sup. Ct. 170, 61 L. Ed. 358, Ann. Cas. 1918B, 54), we fail to find

such a rule. The test of an employer's engagement in interstate commerce within the meaning of the statute is not the character of its engagement at the time of the commission of a negligent act, when not contemporaneous with the injury, but it is the character of its engagement at the time of the consequent injury to its employé. It is clear by the terms of the statute as well as by many decisions of the Supreme Court that the "right of recovery [under the statute] arises only where the *injury* is suffered *while* the carrier is engaged in interstate commerce and *while* the employé is employed by the carrier in such commerce; but," the Supreme Court continued, "it is not essential, where the causal negligence is that of a coemployé, that he also be employed in such commerce, for, if the other conditions be present, the statute gives a right of recovery for the injury or death resulting from the negligence 'of *any* of the  *  *  *  employés of such carrier.' " Pedersen v. D., L. & W. R. R. Co., 229 U. S. 146, 150, 151, 33 Sup. Ct. 648, 649 (57 L. Ed. 1125, Ann. Cas. 1914C, 153). The offending car in this case was carelessly placed on the switch by the defendant, or by one of his servants, who doubtless was a coemployé of the plaintiff; but as the negligence here charged to the defendant was not alone that of placing the car in such position on the switch, but was also that of operating a train of cars in interstate traffic toward and against the car so placed, it is not material whether in committing the first act of negligence the defendant employer, or his servant, the coemployé, was engaged in interstate or intrastate commerce. Second Employers' Liability Cases, 223 U. S. 51, 52, 32 Sup. Ct. 169, 56 L. Ed. 327, 38 L. R. A. (N. S.) 44.

The sole question therefore is, whether there was evidence on which the jury could find the two essentials of recovery under the statute. The parties agreed by stipulation that two cars in the draft were in interstate commerce and that, in consequence, the plaintiff was employed in interstate commerce at the time he suffered his injury. As the plaintiff was the servant of the defendant employed at the time in moving his master's traffic, it manifestly was permissible for the jury to find the character of the employer's engagement in commerce from evidence which established the character of the employé's employment in commerce, for at the time of the injury both were concerned in the identical traffic.

Finding no error in the proceedings below, the judgment is affirmed.