**STANDARD OIL CO. OF LOUISIANA v. MARTIN.**

Circuit Court of Appeals, Eighth Circuit.
October 13, 1927.

No. 7775.

**1. Master and servant ⊜203(2)—Servant assumes ordinary risks, and extraordinary risks which he knows and appreciates.**

A servant, by entering and continuing in the employment of a master without complaint, assumes all the ordinary risks and dangers of the employment, and all the extraordinary risks and dangers thereof which he knows and appreciates.

**2. Master and servant ⊜109—Master must exercise "ordinary care" in transporting servant from place of employment to his home as required by employment contract.**

It was master's duty to exercise "ordinary care" in transporting servant from place of employment to his home, or its vicinity, as required by employment contract, which was that degree of care which an ordinarily prudent person would use under the same or similar circumstances, and negligence is the failure to use such ordinary care.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Ordinary Care.]

**3. Master and servant ⊜219(1)—Employee, riding home on employer's motor truck, held to have assumed risk of injury when projecting board struck tree.**

Experienced employee, who, under employment contract, was customarily transported from his place of work to his home or its vicinity in employer's motor truck, and who on the particular occasion saw board placed across truck for other employees to sit on, and saw that it projected beyond truck on one side, *held* to have assumed risk of injury resulting when projecting end of board struck a tree near road, in absence of negligence in placing board on truck or in speed of truck.

**4. Master and servant ⊜155(1)—Employee is presumed to see and understand dangers that prudent person would see and understand.**

An employee is presumed to see and understand all the dangers that a prudent and intelligent person of the same age and experience, with the same capacity for estimating their significance, would see and understand, and if he neglects to observe, and consequently remains in ignorance of the perils of the employment, the fault is his own, and not that of employer.

In Error to the District Court of the United States for the Western District of Arkansas; Frank A. Youmans, Judge.

Action by David W. Martin against the Standard Oil Company of Louisiana. Judgment for plaintiff, and defendant brings error. Reversed and remanded, with instructions.

T. M. Milling, of Shreveport, La., and T. J. Gaughan, J. T. Sifford, J. E. Gaughan, and E. E. Godwin, all of Camden, Ark., for plaintiff in error.

Before SANBORN and BOOTH, Circuit Judges, and MILLER, District Judge.

MILLER, District Judge. In the court below the defendant in error recovered of the plaintiff in error judgment in the sum of $4,500, for personal injuries to his leg, on account of the alleged negligence of plaintiff in error in the driving of its truck on which the defendant in error was riding. The injury and the extent thereof is admitted, and no question is made as to the amount of the recovery, if any recovery was warranted under the facts, which may be stated most favorably to the defendant in error, as follows:

On the 21st day of November, 1925, he was in the employ of the plaintiff in error (hereinafter called the company), in Union county, Ark., as a general roustabout and extra gang man in connection with its work in and about the oil fields of Union county. Under defendant in error's contract with the company it was the company's duty to transport defendant in error from his place of work to his home or its vicinity.

On that day, at about 4 o'clock in the afternoon, the defendant in error, in company with two or three other men similarly employed and a negro truck driver, under one Bill Griffin, a foreman of the company, having completed the taking down of an oil derrick, were ready to return to the company's warehouse some miles away. This return, as usual, was to be made in the company's truck, an ordinary Ford truck, with a seat in front for the driver and one other person, with a panel immediately behind the driver's seat, rising higher than the driver's head, with a small glass window in the back of the panel. Immediately behind the driver's seat and this panel was a tool box, rising out of the bed of the truck and higher than the bed of the truck. On each side of the truck the frame extended up about a foot and a half in height from the bed of the truck, with standards placed along the sides at intervals; the standards coming up higher than the sides of the truck.

On this occasion, just before the truck started for the warehouse, the company's foreman, Bill Griffin, said to one of the men, "Put a board across the truck to ride on and get on; we are going to the warehouse." At that time the defendant in error and one of the men were seated on the tool box above described, with their backs toward the driver's seat. The foreman, Griffin, and the negro driver were on the front seat, with their backs toward the defendant in error. Upon this command, one of the men picked up a board and placed it crosswise on the truck, immediately in front of defendant in error and the tool box on which he was seated, so that the board rested on the sides of the bed of the truck, and the two other men then got upon the truck and seated themselves on this board, facing the defendant in error. This board extended over the edge of the truck on one side, the exact distance not being shown by the record. Thereupon the truck started for the warehouse along and over a road usually traveled when driving from the vicinity in which the truck started to return to the warehouse. The defendant in error on other occasions had returned to the company's warehouse or its vicinity on that same truck, over the same road. At the time of the placing of the board across the truck, he saw the men pick up the board, and saw it placed across the truck, and either saw or must be presumed to have seen that one end of the board extended out beyond the edge of the bed of the truck. The truck, proceeding along the road at about 12 to 15 miles an hour, reached a point at which there were

two trees, opposite each other, one on each side of the road and close to the wheel tracks thereof, the location of which the defendant in error well knew. At this point in the movement of the truck, the end of the board extending beyond the edge of the truck came in contact with the tree on the left-hand side of the road, moving the opposite end of the board forward against defendant in error's leg, crushing and breaking the same.

Plaintiff in error in its answer pleads as its defense the assumed risk of defendant in error as a complete bar to his recovery. At the close of all the testimony in the case plaintiff in error moved the court for a directed verdict, on the grounds that under the undisputed facts of the case the defendant in error had assumed the risk, which motion was denied, and exception duly saved. This ruling is the only error assigned.

[1] That a servant, by entering and continuing in the employment of a master without complaint, assumes all the ordinary risks and dangers of the employment, and all the extraordinary risks and dangers thereof which he knows and appreciates, is too trite to require citation of authorities. But see Union Pacific Ry. Co. v. Marone (C. C. A.) 246 F. 916.

[2] The learned trial court correctly instructed the jury that it was the duty of the company to exercise ordinary care in effecting and making such transportation, and that ordinary care is that degree of care which an ordinarily prudent person would use under the same or similar circumstances; that negligence is a failure to use such ordinary care. The court also told the jury that as a matter of law the only testimony in the case that could be considered with reference to negligence is the allegation in the complaint charging the company with negligence in permitting the board to strike against the tree, and told the jury that the testimony did not show any negligence on the part of any employé of the company in placing the board on the truck, but that they should consider the testimony with reference to the allegations of negligence in the driver in so driving the truck that one end of the board struck a tree. If there was anything to go to a jury, the instructions were evidently correct, and so considered by both parties, for no objections to any instructions were made. Here it may be noted that defendant in error made no appearance in this court, either in person or by filing any brief.

[3] In view of the fact that the learned trial court found no negligence on the part of the company or any of its employés in

placing the board on and across the truck, and no intimation is made that there was negligence on the part of the driver in driving at an excessive rate of speed, or that the company knew that the end of the board projected out over the side of the truck, it is difficult to perceive how the company could have been guilty of negligence in allowing the board to strike the tree.

In view of the undisputed testimony that the truck was upon and following the wheel tracks or ruts of the road, it is plain that the rate of speed had nothing to do with the board striking the tree. That would have happened at any rate of speed. The proximate cause of the injury was the projecting end of the board. There being no negligence in the placing of the board upon the truck, and no evidence that the position of the board was changed after it was placed thereon, and there being room for the truck itself to pass between the two trees, and no knowledge shown on the part of the company that the board did project beyond the side of the truck, there is an utter lack of any facts that would impute negligence to the company.

[4] Suppose the board, when placed upon the truck, had not protruded over the sides of the truck, but that during the trip and prior to reaching the trees the motion of the truck had caused the board to slide and project over the side of the truck without any knowledge on the part of the company, could any negligence then have been imputed to it? Clearly not. Defendant in error's case is no better, for the court expressly found that there was no negligence in placing the board upon the truck with the end projecting. The only way the accident could have been averted by the company would have been to have left the road to avoid the trees, for which there would have been no reason, in the absence of knowledge on its part of the projecting end of the board. On the contrary, "the employé is presumed to see and understand all dangers that a prudent and intelligent person of the same age and experience, and with the same capacity for estimating their significance, would see and understand; and if he neglects to observe, and consequently remains in ignorance of perils of the employment, the fault is his own, not that of the employer." Dean v. H. Koppers Co., 49 App. D. C. 230, 263 F. 626.

Here the defendant in error was a matured man, the record shows experienced in the service in which he was employed; was accustomed to the means of transportation used in conveying him from his work to his home or its vicinity at the end of each day;

in fact, was used to this particular truck, knew the particular road over which he was being transported, had passed over it divers times before on the same truck; knew the location of the particular trees and their close proximity to the sides of the road; saw the board placed in the position in which it was placed by the person who placed it there; either knew, or must be presumed to have known, that the board did project out over the side of the truck, not only at the time it was placed on the truck, but during a trip of a mile and a half or more he sat on the tool box immediately in front of the board, in full view of the same, and must have understood the significance and danger of the projecting end of the board in passing between the two trees where he knew the truck must pass. Gila Valley Railway Co. v. Hall, 232 U. S. 94, 34 S. Ct. 229, 58 L. Ed. 521; Northern Central Coal Co. v. Barrowman (C. C. A.) 246 F. 906.

Clearly the motion for a directed verdict should have been granted, and for that error this case is reversed and remanded, with instructions that a new trial be granted.